J-S09003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LAVERN BRINSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIANT EAGLE, INC., T/D/B/A | : | No. 665 WDA 2022 |
| BRIGHTON HEIGHTS GIANT EAGLE, | : | |
| AND TRINITY DOOR SYSTEMS, INC. | : | |

Appeal from the Order Entered May 16, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-15-016638

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　　　**FILED: JUNE 6, 2023**

Appellant, Lavern Brinson, appeals *pro se* from the trial court's May 16, 2022 order that dismissed with prejudice her claims against Appellees, Giant Eagle, Inc., t/d/b/a Brighton Heights Giant Eagle ("Giant Eagle"), and Trinity Door Systems, Inc ("Trinity") (collectively referred to herein as "Appellees"). Due to substantial deficiencies in Appellant's brief, we dismiss her appeal.

On September 23, 2015, Appellant filed a negligence complaint against Appellees.  Therein, she alleged that, on October 10, 2013, Appellant arrived at Giant Eagle, a grocery store, as a business invitee to shop.  Complaint, 9/23/15, at ¶¶ 2, 23.  According to Appellant, Giant Eagle had a set of automatic doors at its main entrance, which Giant Eagle contracted with Trinity to repair, maintain, and service, among other things.  *Id.* at ¶¶ 9-12. Appellant claimed that as she

walked up to the first automatic door, the door opened, [Appellant] entered the doorway and saw the second automatic door open, when suddenly and without warning and through no fault of her own, the first automatic door closed on [Appellant], whereby her arm was seriously and permanently injured due to the defective automatic doors.

*Id.* at ¶ 26. Appellant averred that, as a result of Appellees' failure to, *inter alia*, inspect the doors and ensure that their sensors functioned properly, she has suffered shock and injury to the nervous system; strains and sprains; generalized trauma to the entire body; generalized trauma to her arm; reflex sympathetic dystrophy ("RSD") of the right arm; severe pain in the right extremity; contusion of the right forearm; soft tissue injury to her right arm; and wrist pain. *Id.* at ¶¶ 17, 31. She asserted that, as a result of those injuries, she — among other things— "has and will be required to expend large sums of money for surgical and medical attention, hospitalization, medical supplies, surgical supplies, medicines, and attendant services[,]" and "has been and will be deprived of her earnings[.]" *Id.* at ¶ 32.

Discovery took place, and trial was continued various times for various reasons.[1,2] Based on our review of the record, it appears that the case was finally scheduled to proceed to trial on May 16, 2022. On that day, the trial court held a conference with the parties before the commencement of the jury

---

[1] Prior to May 16, 2022, our review of the record does not indicate that any party filed any dispositive motions.

[2] Appellant was represented by counsel until June of 2021. *See* Trial Court Order, 6/4/21 (granting Appellant's counsel's motion to withdraw appearance). Thereafter, she proceeded *pro se*.

trial, where it acknowledged that all parties had filed pre-trial motions and inquired into what evidence Appellant intended to introduce at trial:

> [The court]: … All parties have filed pre-trial motions.[3]  I think the most efficient way to do this is, [Appellant], is for me to ask you some questions about what you intend to prove in your case. Specifically, how many witnesses do you intend to call[?]
>
> [Appellant]: I intend to call two.
>
> [The court]: Who are they?
>
> [Appellant]: One is my sister -- my prayer sister.
>
> [The court]: And what is her name?
>
> [Appellant]: Lisa Davis.
>
> [The court]: And who else do you intend to call?
>
> [Appellant]: Temika Green.
>
> [The court]: What would Ms. Davis say?
>
> [Appellant]: Ms. Davis would be a character witness on the damages.  Before this accident happened, I was faithfully and truthfully to [sic] the work of God, worshipping, doing clergy, going to hospitals, laying hands, helping the poor, feeding the hungry.  And I can't do that no more.  She would be a witness talking about feeding the flock.
>
> [The court]: Just essentially, you called her a character witness. But really your character is not at issue here.  I think you mean is [sic] what we call a condition witness.  She knew what you did before.  And she'll be able to tell us what activities you engaged in before.  And you would tell the jury that you cannot do those anymore?
>
> [Appellant]: Yes, sir.
>
> [The court]: And what would Ms. Green say?

---

[3] Based on our review of the record, it is unclear to us which pre-trial motions the trial court is referencing.

- 3 -

[Appellant]: Ms. Green would say I lost the life of living. I used to be there for all of them.

[The court]: We can talk about that when and if we get to that stage. So you only intend to call two witnesses?

[Appellant]: Yes, sir.

N.T., 5/16/22, at 3-4.

The trial court then inquired into what documents Appellant intended to offer into evidence. *Id.* at 4-22. Eventually, the issue of whether Appellant could read doctor reports into evidence arose, and the following exchange occurred:

[The court]: It appears that [Trinity] has filed a motion basically asking me to throw out [Appellant's] case completely; right?

[Trinity's counsel]: Yes, Your Honor. Actually, I filed a brief and [Giant Eagle's counsel] filed a motion. I joined in on the motion. My brief deals with the very issues that she cannot prove the case on damages.[4] And a negligence case requires a breach of a duty and proof of damages. And without a medical doctor who's going to testify about what her injuries were and what her damages are, she will not be able to prove the second element of her case -- negligence.

[The court]: Which is?

[Trinity's counsel]: Damages.

[The court]: Harm was caused?

[Trinity's counsel]: Harm. And a causal connection between the incident and the medical treatment that she received. And I think she said that she's going to read the report of Dr. [Brinda] Navalgund, but she did not take a deposition for use of trial. And if she [in]tends to read a report, we will object to it because we

_____

[4] We are unable to locate these filings in the record. In our review, we uncovered no motion asking the trial court to dismiss Appellant's case, nor did we locate a motion arguing that Appellant is unable to prove damages.

will not have an opportunity to cross-examine the doctor, and we certainly have that right.

[The court]: It's one thing to say she cannot read a doctor's report into evidence. It's another thing to conclude from that [that] her case should be dismissed completely, isn't it?

[Trinity's counsel]: Yes, unless she has some other evidence of an injury[,] and she can support that.

[The court]: I know that [Appellant] has filed some paperwork stating that she wants to read a number of things into evidence including doctor reports. Let's just talk about the simple issue of can [Appellant] read any doctor's report into evidence. And you have just argued that she cannot.

[Trinity's counsel]: Correct.

[The court]: [Giant Eagle's counsel?]

[Giant Eagle's counsel]: Obviously, I concur. I filed a motion to the same effect.[5] We have the right to cross-examine any adverse witnesses. She does not have the right to read a report. It's not a proper way to run a trial.

[The court]: Okay. [Appellant], … I believe based on the paperwork you have filed -- you do want me to allow you to read doctor's reports to the jury?

[Appellant]: Yes, sir.

[The court]: And they're objecting. Do you know what hearsay is?

[Appellant]: Yes, sir. It's--

[The court]: I'm not asking you to recite it. Let me tell you what I think it is. It's an out-of-court statement -- these reports were made out of court. And it's being offered into evidence to prove the truth of what is in the statement. Is that what you want to do? You want me to read to the jury[,] or even give to the jury, the medical report that says you suffered certain medical problems as a result of this incident; correct?

_____

[5] Again, we do not see such a motion in the record.

[Appellant]: Yes, sir. I want to give them this report that says[,] before this incident[,] I had none of these conditions. And after the incident, I had all these injuries. That report was the proof of my medical. There's the medical records from 2010 that states that they know they have in their records, I had conditions [*sic*]. It's preexisting condition [*sic*]. And have [complex regional pain syndrome ("CRPS")] and RDS[6,] fibromyalgia [*sic*]--

[The court]: Hold on. What are the three things again?

[Appellant]: CRPS.

[The court]: What else?

[Appellant]: RDS.

[The court]: And what else?

[Appellant]: Fibromyalgia.

[The court]: But that's hearsay?

[Appellant]: No, sir. It's proof. It's a document that's of record.

[The court]: Obviously, you don't know what hearsay is then. It's an out-of-court statement that you're trying to introduce to prove to the jury what is in there is true. And that's hearsay. And we can talk about hearsay all day if we want. But that's clearly inadmissible. You may read from no medical reports at all. I'm not letting you do that. I'm sustaining the objection. No medical record will be read to the jury.

[Giant Eagle's counsel]: Your Honor, it begs the question that [Trinity's counsel] was raising. If she has no doctor to testify as to whether her injuries are [*sic*], then what evidence can a jury hear as to what her injuries are? We know in certain cases, a lay witness can talk about an injury that a jury understands, such as a broken bone.

[Appellant], I believe, believes that she has been seriously injured as a result of this incident. We dispute that. She needs proof of that and she doesn't have it. So the question is, if she's going to testify, then what can she say happened as a result of this incident. It's my view that without doctors[,] she can't say much, if anything. She can say I got bruised which resulted in a

---

[6] We believe Appellant meant RSD, instead of RDS.

short period of time [*sic*]. But beyond that, you now have a causation problem or any other issue that she may have -- any other problem she has functioning in life or among those lines because she doesn't have a doctor to say, yes[,] it caused this particular injury or problem.

[The court]: [Appellant], you understand that you cannot read from the medical records, nor can you tell the jury what a doctor told you what your condition is. For example, those conditions that you mentioned before.

[Appellant]: My ex-attorney had put in a request of them to take a video of her. Is that admissible?

[The court]: Do [you have] a video?

[Giant Eagle's counsel]: None was ever taken.

[The court]: [Giant Eagle's counsel] said a video was not taken. [Trinity's counsel], as an officer of the [c]ourt, do you know of any video?

[Trinity's counsel]: I have no recollection of any video of Dr. Navalgund.

[The court]: So there's no video. So how do you intend to prove that the serious injuries that you say occurred from this alleged incident, were the result from this alleged incident?

[Appellant]: From the negligence and premises liability that caused my accident. They're acting like this [is] a medical malpractice[ case,] and this is a personal injury claim for premises liability and negligence. I have to prove that with the documents. Their own documents will prove that they were negligent.

[The court]: Ma'am, we're talking about -- what were the three conditions again?

[Appellant]: CRPS.

[The court]: Go ahead. What else?

[Appellant]: RDS.

[The court]: And what else?

[Appellant]: Fibromyalgia.

[The court]: Okay.

[Giant Eagle's counsel]: Your Honor, the second item is RSD.

[The court]: … [D]o you have one or more doctors?

[Appellant]: I have nine doctors.

[The court]: Has one or more of your doctors told you that you suffer from these conditions as a result of the accident?

[Appellant]: Yes, sir.[7]

[The court]: So you're not allowed to talk to the jury or testify about what your doctors told you, nor are you allowed to introduce any documentary evidence about these three conditions. So now given that ruling, how can you intend to prove you actually do suffer from these ailments? Secondly, that they were caused by the alleged incident at Giant Eagle?

[Appellant]: I[] guess it would be impossible if I can't admit the medical evidence. I have nine doctors that would state that from 2013 all the way to 2022, this RSD, the conclusion that the door hit me, and all these nine years from this door hitting me [*sic*]. If I can't use my medical evidence --

[The court]: Then what?

[Appellant]: I can go as far as their negligence and premises liability. I won't get paid for medical, but they're still responsible for the premises liability and the negligence of the door being the way it was that hit me. Because they didn't fix it properly. The invoices for this door shows [*sic*] when it hit me.

[The court]: Ma'am, again. I'll ask you one more time. How do you intend to prove you have these conditions[,] let alone that the door caused these conditions? You can see that you cannot prove that.

[Appellant]: You're not letting me do my evidence.

_____

7 Appellant maintains this position in her brief. **See** Appellant's Brief at 25 (asserting that, "[e]ver since October 16, 2013, to this present day[,] … Appellant has continued to be treated for CRPS, RSD, fibromyalgia, high blood pressure, depression, [and] stress[] due to the incident on the Giant Eagle premises on October 10, 2013[.] [M]edical records request[ed] by … Appellees [from 2010 show that A]ppellant had none of these conditions before October 10, 2013…").

- 8 -

[The court]: Thank you. [Giant Eagle's counsel], do you have a motion?

[Giant Eagle's counsel]: Based on [Trinity's] motion on the fact she cannot prove damages, she can't prove her case. And therefore, request that the [c]ourt dismiss the case for the inability to prove her case.

[The court]: [Trinity's counsel]?

[Trinity's counsel]: I believe that [Appellant] cannot prove her claim on damages. There's no admissible medical testimony. And as we said earlier, that element of her claim of damages. And she acknowledged the second element.

[The court]: Whether this is considered a motion to dismiss or an oral motion for summary judgment, it basically boils down to the same thing. Based on the offer of proof made by [Appellant] and her concessions, that based on my prior ruling, she cannot prove her case. I believe that [Appellant], I must grant the oral motion for summary judgment and/or non-suit and/or motion to dismiss. Your claim is dismissed with prejudice. Thank you.

*Id.* at 22-32.

That same day, the trial court entered an order dismissing Appellant's claims with prejudice. She thereafter filed a timely notice of appeal. The trial court instructed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and she timely did so. The trial court subsequently issued an order directing the Department of Court Records to transmit the record without the filing of a Rule 1925(a) opinion, as it stated that the reasons for the entry of the May 16, 2022 order already appear of record in the May 16, 2022 transcript.

On appeal, Appellant raises the following fifteen questions for our review, which we produce *verbatim*:

1. Is Appellant entitled to a New Trial due to the trial Courts Judicial Bias, Discrimination, Prejudice, Civil Rights Violations, by

- 9 -

being denied a jury trial without any request or motion made by either party this violated her 7th and 14th Amendment.

2. Were Appellants rights under 28 USC. App. Fed. R. Civ. P. Rule 38 violated when she was denied Due Process because a Jury Trial was Demanded under Rule 38, Rule 39(a)(1)(b), for these reasons Appellant is entitled to a New Trial in the United States Superior Court of Pennsylvania.

3. Did the Court take the Appellants Trial Rights away from her when they did not allow her to examine prospective jurors under Rule 47(a) (1967C.954 s.1.) or a jury trial that makes both findings of fact and law through a full trial expounding the evidence of the case. By not allowing Appellant any kind of trial/jury trial to prove her claims against the Appellees.

4. After seven years of processing all documents to the Court that was required by Law, and then denied a jury trial this violated her Rights under the 7th Amendment of the Bill of Right 1964, and in doing so also Violating the 1st and 14th U.S. Constitutional Amendment.

5. The trial court era in violation of 42 PA Const Stat 8309 (2014) (a) trial court failed to give Appellant due process in submitting tangible evidence to a jury.

6. Did the honorable court deny Appellants submission of genuineness and Authenticated documents that proved both Appellees were negligence and of premises liability which is error in the courts decision that was made in plain era from a Motion in Limine. Spindler v. Brito-Deforge, 726So, 2d963, 964 (Fla.5thDCA 2000) motion in limine Rule 103 (a)

7. Did the Honorable Judge violate Appellants right to submit tangible/Preponderance of evidence to the Court by not allowing Appellant to submit into Trial Court Records, this admissible evidence is in court records into the Court. Copies of Appendix and Exhibits submitted herein…

8. Appellant 14th Amendment was violated when the Court denied her the right to introduce photographs of injuries, incident scene, Video Expert, Witness transcripts, videos discovery, eleven treating different Doctors reports Past, Present and Future interrogatories discovery, Request for Admission, both Appellees pretrial statements,

- 10 -

9. Did the court error under the rule of court proceedings when they never allowed the plaintiff to enter her opening statement at trial. Already submitted in record in the era of appendix evidence

10. Did the court Violate plaintiff's rights under Rule 702, Rule 806.6 also Rule 803.18 by not allowing plaintiff to submit admissible evidence of medical records concerning mental and physical injuries to the jury. Copies are in record Again the District Court of Common Pleas denying Appellant rights to submit this evidence into Court Records.

11. The judge era when he deceived the Court and Appellant by saying that we would go back to submitting of admissible evidence after we he hears the medical evidence which he never heard any of the Doctors Reports Bias, just the diagnosis of the medical conditions of CRPS, RDS, and Fibromyalgia then he denied the submission of all medical evidence into court record. And Never went Back to the admissible evidence, Then dismissed the Claim with Prejudice with No Legal Law. 207 Pa. Code Rule 2.3 Bias, Prejudice, and Harassment.

12. Was the Judge in era and in violation of the Appellants Rights under Court processing procedures when he discussed off record a video tape that was not submitted as admissible evidence into Court record by the Appellant but was from the Appellees which he discussed off record with them that was not admissible evidence submitted into the court. while at the same time denying her submission of the Incident DVD that the Appellees entered in the Production of Records to the Appellant which has an Expert Witness Report stating that the DVD has been tampered with that the Appellant was submitting as admissible evidence but was denied. copies of expert report submitted herein.

13. Did the Court error when they denied Appellant the Right to submit Admissible Evidence from Appellees own Records that Proved both Appellees were aware of these Nine requested repairs invoices/orders from October 7, 2013, to October 18, 2022, acknowledging the same Repairs for the Dangerous Issues on this Giant Eagle Main Entry Door #10524 Repairs were still needed but went Unrepaired for Ten straight Days. Three days before Appellant was Permanently Injured by this same door and Seven days After the Door were still not Fixed and Both Appellees were Fully aware of this hazardous dangerous Door that was in dire need of Emergency Repairs. Copies submitted herein.

14. Did the Court deny Appellant her rights to lay a solid foundation of entering admissible evidence into the Court Records. any legally binding writings such as contracts, depositions and affidavits also any Authentication or Identification under 28 App. F.A. Rule 901 (a)(b)(3)(7)(9).

15. Does sufficient evidence support the trial court's finding supported by clear and convincing evidence, that the Appellants Claims should be Dismissed with Prejudice.  From an Appellees Motion in Limine?  Under Rule 801 (2)( C)(D).

Appellant's Brief at 12-17.

Appellate briefs must conform with our Rules of Appellate Procedure. *See* Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").  With respect to the argument section of an appellate brief, Rule 2119(a) mandates that:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-- in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

"When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (citations

- 12 -

omitted). Further, "[c]itations to authorities must articulate the principles for which they are cited." *Id.* (citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.* (citations omitted). *See also In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.") (citations omitted).

Moreover, "[a]lthough this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *In re Ullman*, 995 A.2d 1207, 1211-12 (Pa. Super. 2010) (citation omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Id.* at 1212 (citation omitted).

Here, although Appellant raises fifteen issues in her statement of the questions involved, she does not divide the argument section of her brief into fifteen corresponding parts. *See* Pa.R.A.P. 2119(a). Rather, her argument section has one part, which spans a mere eight pages. *See* Appellant's Brief at 26-34. The argument itself is incoherent and undeveloped. While Appellant

- 13 -

makes general references to constitutional amendments, statutes, rules, and cases, she does not meaningfully discuss them and explain how, or why, they apply to her case. She instead makes conclusory assertions such as that her first, seventh, and fourteenth amendment rights were violated.

In addition, her argument does not focus on the basis for why the trial court ultimately dismissed her case. Specifically, she does not articulate why the trial court erred in determining that she could not read her doctors' reports to the jury or otherwise testify about what her doctors told her. She also does not explain how she could have proven her negligence case without this evidence, and she does not proffer a reasoned analysis to support her claim that the trial court should not have dismissed her case at the juncture which it did. These failures by Appellant hinder our review and result in the waiver of her claims.[8] Accordingly, we dismiss Appellant's appeal.

Appeal dismissed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2023

---

[8] We also point out that Appellant did not raise any specific objection in opposition to the dismissal of her case at the May 16, 2022 proceeding. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Thus, her claims are waived on this basis as well.